UNITED STATES BANKRUPCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

In re:

MICHAEL JACKSON and  
LORI JACKSON,

        Debtors.

Case No. 09-33790-dof  
Chapter 13 Proceeding  
Hon. Daniel S. Opperman

_____/

## OPINION REGARDING DEBTORS' OBJECTION TO PROOF OF CLAIM OF INTERNAL REVENUE SERVICE

### BACKGROUND FACTS AND PROCEDURAL HISTORY

On October 18, 2004, Michael and Lori Jackson ("Debtors") filed for relief under Chapter 13 of the Bankruptcy Code. At that time, the Debtors owed approximately $15,000.00 in federal taxes for the previous three years. The Debtors' Chapter 13 Plan, which treated the federal tax debt as a priority claim, was confirmed on May 17, 2005. On August 1, 2005, the Internal Revenue Service ("IRS") filed a proof of claim stating that the Debtors owed general unsecured debt of $550.00, a secured debt of $16,000.00, and a priority debt $9,500.00. The Debtors did not object to that proof of claim. The Debtors filed a plan modification on October 31, 2008, which raised their payments to over $1,600.00 per month. Ultimately, the Debtors were unable to maintain their payments and their case was dismissed on June 13, 2009. Over the course of that case, the Debtors paid $13,439.00 to the IRS.

On July 15, 2009, the Debtors again filed for relief under Chapter 13 of the Bankruptcy Code. On July 27, 2009, the Debtors filed a proposed Chapter 13 Plan, which was amended on August 28, 2009. The Amended Plan provided that the entire IRS claim would be treated as a

1

class 5(b) secured debt and that it would be crammed down to the value of their property ($24,000.00), with the remainder bifurcated into a general unsecured claim. The Amended Plan further stated that there were no priority debts owed by the Debtors at the time of filing. The Amended Plan also stated in Section F, entitled Proofs of Claims Filed At Variance With The Plan:

> In the event that a creditor files a proof of claim that is at variance with the provisions of this Plan, the following method is to be employed to resolve the conflict:
>
> 1. Regarding claims for which the Plan does not propose a "cramdown" or modification, the proof of claim shall supersede the Plan as to the claim amount, percentage rate of interest, monthly payments, classification of claim, percentage of interest on arrears, if any, but the proof of claim shall not govern as to the valuation of collateral.
>
> 2. As to claims for which the Plan proposes a "cramdown" or modification, the proof of claim governs only as to the claim amount, but not with respect to any of the other aforementioned contractual terms.
>
> 3. If a holder of a claim files a proof of claim at variance with this Plan or related schedules, the Trustee shall automatically treat that claim as the holder indicated, unless provided otherwise by order of the Court.

On September 1, 2009, the IRS filed a proof of claim, which was broken down into three parts: (1) a secured claim of $9,897.00 regarding the tax years 2001 and 2004; (2) an unsecured priority claim of $41,153.69 regarding the tax years 2002, 2003, 2005, 2006, and 2007; and (3) a general unsecured claim of $9,009.45 regarding penalties and interest associated with the tax debts. Attached to the proof of claim were tax liens filed with Livingston County. The first tax lien, recorded on March 24, 2003, indicated that it was for the years 2000 ($2,676.39) and 2001 ($8,488.33). The second tax lien, recorded on April 23, 2008, indicated that it was for the years 2004 ($5,233.28), 2005 ($10,879.46), and 2006 ($13,054.80). That proof of claim was clearly at

variance with the terms of the Debtors' Amended Plan. The IRS did not object to the Debtors' Amended Plan, and, on October 8, 2009, the Court entered an Order Confirming Chapter 13 Plan. The Order Confirming Plan stated, in part: "All filed claims to which an objection has not be filed are deemed allowed pursuant to 11 U.S.C. § 502(a), and the Trustee is therefore ORDERED to make distributions on these claims pursuant to the terms of the Chapter 13 plan."

On January 27, 2012, the Debtors' filed a proposed modification to their confirmed Chapter 13 Plan, seeking to lower the dividend to be paid to general unsecured creditors. The proposed modification stated that the Debtors were "still required to pay the remaining balance owed on the crammed down claim of the IRS . . . ." On February 22, 2012, the Debtors filed a Certificate of No Objections and the proposed plan modification was accepted.

On February 23, 2012, the Chapter 13 Trustee filed an Objection to the Proof of Claim of the IRS. That Objection stated that:

4. The proof of claim attaches documentation that indicates that the claim is not entitled to its claim to priority treatment. The taxes forming the basis of the claim, were not assessed within 240 days prior to the date of the petition and accordingly, do not qualify for priority status for income taxes pursuant to 11 U.S.C. 507(a)(8)(ii).

5. The Trustee objects to allowance of the priority portions of the claim, and requests that the claim be allowed, but modified to disallow any priority status to the claim.

On April 10, 2012, prior to any response from the IRS, the Trustee withdrew the Objection to the Proof of Claim of the IRS.

On November 20, 2014, the Trustee filed a Motion to Dismiss the Debtors' case, stating that the Debtors have failed to make regular payments as required by 11 U.S.C. § 1326; a default in payments has occurred; and partial payments have been received but payments are delinquent, with the last payment being received on November 11, 2014. At that time, the Debtors were

3

over 100% paid into the Plan, the Plan had passed its five year maximum term, and the Plan had yielded $34,965.27 to the IRS.

On November 21, 2014, in an attempt to resolve the issues raised by the Trustee's Motion to Dismiss, the Debtors filed an Objection to the Proof of Claim of the IRS. The Debtors argue that the proof of claim incorrectly classifies a large portion of the debt as unsecured priority claims. Specifically, the Debtor argues that (1) the debt for the 2005 and 2006 taxes, totaling $25,886.00, was listed as unsecured priority debt, but it should have been listed as secured debt because the Federal Tax Lien filed April 23, 2008, included tax debts for the years 2004, 2005, and 2006; and (2) the debt for the tax years 2002 and 2003, totaling $13,280, was not assessed within the 240 days prior to the date of the petition, and, accordingly, does not qualify for priority status pursuant to 11 U.S.C. § 507(a)(8)(ii).

The IRS filed a Response to the Debtors' Motion on January 6, 2015. The IRS attached copies of the Trustee's reports, which indicate that the Trustee paid $9,897.00 on the secured claim and $25,068.27 on the priority claim of the IRS. The IRS did not attach a copy of the corresponding sheet for its unsecured claim.

On January 27, 2015, the Court held a hearing on the Debtors' Objection to the Proof of Claim of the IRS and it set a schedule for the filing of briefs. On January 29, 2015, the Court entered an Order Establishing Briefing Deadlines. The briefing deadlines were extended by stipulation of the parties.

On March 6, 2015, the Debtors filed their brief in support of their Objection. The Debtors assert that the IRS failed to object to the Chapter 13 Plan pre-confirmation, failed to object to the Confirmation Order, failed to object to the Plan Modification, and did not file a plan modification to alter their treatment at any point after the Plan was confirmed. The Debtors

4

argue that (1) the IRS proof of claim was confusing and contradictory; (2) the Plan was filed in good faith with the intent to cram down the IRS secured claims, where the Debtors believe all of their IRS debt was either secured or non-priority unsecured; (3) the IRS failed to take any action to protect its priority status, and accordingly, should be deemed to have accepted the terms of the Plan; and (4) the IRS claim should be discharged pursuant to the Plan.

On April 3, 2015, the IRS filed its response brief. The IRS argues that (1) the Debtor's income tax returns for the tax years 2005, 2006, and 2007 were due, including any extensions, less than three years before the filing of the petition, and, accordingly, the claims regarding those years are priority claims pursuant to 11 U.S.C. § 507(a)(8)(A)(i); (2) the filing of a notice of lien regarding the income tax liability for the years 2001, 2004, 2005, and 2006 and the fact that the IRS claim was bifurcated under § 506(a) does not preclude the priority status of the claims; (3) the claim for the tax years 2002 and 2003 is entitled to priority status, as set forth in 11 U.S.C. § 507(a)(8)(A)(ii), because the stay was in effect due to the 2004 bankruptcy case and collection of those claims was precluded; (4) according to the Trustee's own records, the Debtors have paid the entire secured claim of $9,897.00, without interest, and $25,06827 toward the unsecured priority claim, leaving $16,085.42 owing on the IRS's unsecured priority claim; (5) the Debtors' objection to the allowance of this claim is untimely and should be barred or treated as waived; and (6) the Debtors' argument that the proof of claim was provided for and paid in accordance with the plan is not a proper ground for objection to a claim under 11 U.S.C. § 502.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B)

(allowance or disallowance of claims) and (K) determinations of the validity, extent, or priority of liens).

The issues in this adversary proceeding arise from Title 11 of the United States Code and do not involve any matter which limits this Court's jurisdiction as detailed by the United States Supreme Court in *Stern v. Marshall*, -----U.S. ----, 131 S. Ct. 2594, 2608, 180 L.Ed.2d 475 (2011), and later by the United States Supreme Court in *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014). *See also Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

Most recently, the United States Supreme Court has determined that so long as the parties knowingly and voluntarily consent, Article III allows bankruptcy judges to adjudicate certain claims. *Wellness Int'l Network, Ltd. v. Sharif*, No. 13-935, 2015 WL 2456619 (U.S. May 26, 2015).

## APPLICABLE LAW

### A. 11 U.S.C. § 502

11 U.S.C. § 502 states, in part: "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

### B. 11 U.S.C. § 506(a)(1)

11 U.S.C. § 506(a)(1) states:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest

## C. 11 U.S.C. § 507(a)(8)

11 U.S.C. § 507 states, in pertinent part:

(a) The following expenses and claims have priority in the following order:

**(8)** Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

    **(A)** a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition—

        **(i)** for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

        **(ii)** assessed within 240 days before the date of the filing of the petition, exclusive of—

            **(I)** any time during which an offer in compromise with respect to that tax was pending or in effect during that 240-day period, plus 30 days; and

            **(II)** any time during which a stay of proceedings against collections was in effect in a prior case under this title during that 240-day period, plus 90 days; or

        **(iii)** other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case[.]

## D. 11 U.S.C. § 1327

11 U.S.C. § 1327(a) states: "[t]he provisions of a confirmed plan bind the debtor and each creditor whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted or has rejected the plan."

## DISCUSSION

### A. Laches

There is no specific limitation period for objecting to a proof of claim set forth in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or the Local Bankruptcy Rules. *See* 11 U.S.C. § 502; Fed. R. Bankr. P. 3007. However, the equitable defense of laches may limit the time within which a party may file an objection to a proof of claim.

"Laches is the 'negligent and unintentional failure to protect one's rights.'" *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002). It is an equitable doctrine used to determine the timeliness of claims when there is no specific statute of limitations that is applicable. *Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elec. Corp.*, 518 F.2d 913, 926 (9th Cir.1975). In such cases, "[e]quity ... fashions its own time limitations through laches, the doctrine embodying the principle that equity will not aid a party whose unexcused delay would, if his suit were allowed, prejudice his adversary." *Id*. "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Nartron Corp.*, 305 F.3d at 408.

The IRS argues that the Debtors' objection to its proof of claim is untimely and that it should be barred or treated as waived. In this case, the IRS proof of claim was filed pre-confirmation, on September 1, 2009, and the Debtors filed their Objection to the proof of claim more than five years later, on November 21, 2014. In that time, the Debtors' Plan was confirmed, the Trustee paid the IRS claim according to the terms of its allowed claim throughout the five-year plan period and beyond; and the plan had passed its maximum term. As the IRS claim was filed pre-confirmation, Debtors' counsel should have been aware that the proof of claim was at variance with the proposed cram down treatment of the IRS claim in the Plan. As

noted, the confirmed Plan provided: "If a holder of a claim files a proof of claim at variance with this Plan or related schedules, the Trustee shall automatically treat that claim as the holder indicated, unless provided otherwise by order of the Court." During the plan period, Debtors' counsel undoubtedly received the Trustee's reports and should have been aware that the Trustee was paying the IRS claim as set forth in the proof of claim and not according to the cram down provision. Despite the numerous opportunities to address this issue pre-confirmation and during the plan period, Debtors' counsel failed to object to the IRS proof of claim until the maximum plan period had been exceeded and the Trustee filed a Motion to Dismiss. In particular, Debtors' counsel could have addressed this issue when the plan was modified on January 27, 2012, years after the IRS filed its claim. Therefore, the Court must find that the Debtors have shown a lack of diligence.

Despite the fact that the Debtors have clearly done their best to complete their plan and pay the IRS claim, the unsecured priority claim has not been paid in full. According to the Trustee's records, the Debtors have paid the entire secured claim of $9,897.00 without interest, and $25,068.27 toward the unsecured priority claim, leaving $16,085.42 owing on the unsecured priority claim. The parties did not provide the Trustee's records for the amounts paid to the IRS on its general unsecured claim. At this very late stage, the IRS would undoubtedly be prejudiced if the Debtors' objection to its proof of claim were allowed. Accordingly, the Court concludes that the Debtors' objection to the IRS proof of claim is barred under the doctrine of laches.

B. Effect of Proof of Claim at Variance with Plan

As noted, the Plan provided that the entire IRS claim would be treated as a class 5(b) secured debt and that it would be crammed down to the value of their property ($24,000.00),

9

with the remainder bifurcated into a general unsecured claim. The Plan also stated in Section F, entitled Proofs of Claims Filed At Variance With The Plan:

In the event that a creditor files a proof of claim that is at variance with the provisions of this Plan, the following method is to be employed to resolve the conflict:

6. Regarding claims for which the Plan does not propose a "cramdown" or modification, the proof of claim shall supersede the Plan as to the claim amount, percentage rate of interest, monthly payments, classification of claim, percentage of interest on arrears, if any, but the proof of claim shall not govern as to the valuation of collateral.

7. As to claims for which the Plan proposes a "cramdown" or modification, the proof of claim governs only as to the claim amount, but not with respect to any of the other aforementioned contractual terms.

8. If a holder of a claim files a proof of claim at variance with this Plan or related schedules, the Trustee shall automatically treat that claim as the holder indicated, unless provided otherwise by order of the Court.

The Debtor argues that the IRS is bound by the cram down provision of the Plan and the IRS argues that its claim was clearly at variance with the cram down provision and that the "claims at variance" provision applied to its claim. The Debtor argues that IRS did not object to the Debtors' Plan pre-confirmation, did not object to the Order of Confirmation, did not object to the Proposed Plan Modification, and did not file a plan modification to alter its treatment at any point after the Plan was confirmed. The IRS argues that there was no reason for it to object to the Plan or Proposed Plan Modification, or seek to modify the Plan post-confirmation, because the "claims at variance" provision of the Plan was the applicable provision and, at all times during the plan period, its claim was paid according to that provision.

The Court finds that the "claims at variance" provision applied to the IRS claim. Although there are questionably some issues with the classification of the claims in the IRS

10

proof of claim, the "claims at variance" provision was applied and the Trustee paid the IRS claim accordingly.  The IRS did not and would not have foreseen the need to object to the Plan or seek to modify the Plan.  Pursuant to 11 U.S.C. § 1327(a), both the Debtors and the IRS are bound by the terms of the confirmed Plan and the Court must conclude that the Debtors' objection to the IRS proof of claim be denied.

## CONCLUSION

The Court concludes that justice requires that the Debtors' Objection to the IRS Proof of Claim be denied.  Counsel for the IRS is directed to prepare and submit an order consistent with this Opinion and consistent with the procedural rules of this Court.

**Signed on June 11, 2015**

                                                **/s/ Daniel S. Opperman**
                                                **Daniel S. Opperman**
                                                **United States Bankruptcy Judge**

11

09-33790-dof    Doc 144    Filed 06/11/15    Entered 06/11/15 13:40:50    Page 11 of 11